J-S09029-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| | : | No. 2428 EDA 2018 |
| ERNESTO FONTANEZ | : | |
| | : | |
| Appellant | | |

Appeal from the Judgment of Sentence Entered June 18, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0005937-2016

BEFORE: OLSON, J., McCAFFERY, J., and MUSMANNO, J.

MEMORANDUM BY McCAFFERY, J.:                    Filed: April 30, 2021

Ernesto Fontanez (Appellant) appeals from the judgment of sentence imposed June 18, 2018, in the Philadelphia County Court of Common Pleas. This appeal returns following a remand by a prior panel of this Court for the appointment of new appellate counsel. *See Commonwealth v. Fontanez*, 2428 EDA 2018 (unpub. memo. at 7-8) (Pa. Super. Dec. 18, 2019). Appellant's sole issue on appeal asserts the trial court erred when it denied his pretrial motion to dismiss the charges based upon a violation of Pennsylvania Rule of Criminal Procedure 600. We affirm.

The facts underlying Appellant's conviction are summarized by the trial court as follows:

The complainant in this case is Sherry Szymanek ("Sherry"). At the time of the underlying incident, she resided in a home on

East Monmouth Street in Philadelphia. [T]wo weeks prior to the alleged crimes, [Sherry] allowed Appellant and his paramour to store their belongings on the first floor of her home, after the two had been evicted from their shared residence. Sherry provided Appellant with a copy of her house key (so he could access his belongings), but neither Appellant nor his paramour ever resided with the complainant. On the day at issue, Appellant did not have permission to enter Sherry's home.

On April 3, 2016, around 3:00 p.m., Sherry returned from the supermarket and realized that her front door "was kicked in and the whole frame was messed up." Sherry immediately knocked on her neighbor's door to see if he could provide information about how the damage occurred. When she approached the neighbor's door, she observed Appellant "screaming and yelling and fighting with whoever was in the house." Sherry testified that as soon as she stepped through the neighbor's door, Appellant aggressively ran towards her, threw her against the wall, and used both of his hands to choke her. Appellant did not stop until Helena Meeker ("Helena") pulled him away.

Sherry quickly returned to her own home, locked the door, and ran upstairs to her bedroom. A few minutes later, she looked through her bedroom window and observed Appellant and three women "screaming" outside of her residence. Specifically, Appellant threatened Sherry, stating that he was "going to beat [her] the 'F' up." He then unlocked her front door and the three women — Helena, Alexandra Orosco ("Alexandra'"), and a third, unidentified woman — followed him to Sherry's bedroom.

As Appellant entered the bedroom, he pointed a firearm at Sherry and ordered her to sit on the bed. He then told Alexandra, "Fuck her up, beat her up." Alexandra immediately complied and punched Sherry "several" times over the course of ten to fifteen minutes. At some point, the unidentified woman grabbed a metal pipe from Appellant and attempted to strike the complainant. Sherry testified that she heard Appellant cock the gun, before Helena "grabbed him" and "wrestled him to the ground." Helena eventually gained possession of the weapon and placed it in a bag. Subsequently, Appellant and the three women exited the bedroom. Before Appellant left, he took Sherry's cellphone and told her that "[she] was going to die." Sherry testified that her assailants also took $400 in cash from her closet, but she did not see which assailant took her money.

At some point during the altercation, Sherry's neighbor called the police. By the time the officers arrived, Appellant and the three women were no longer on the property. Officer Daniel Mitchell ("Officer Mitchell") testified that Sherry was "frantic" and surveyed the immediate area. The officers quickly found Appellant among a group of people (which included the women who helped him attack Sherry), walking northbound on Emerald Street. Sherry identified Appellant, Helena, and Alexandra as the individuals who assaulted her and took her belongings.

Officer Mitchell and [another officer] stopped Alexandra and recovered $100 from her person. Officer Derrick Clark stopped Appellant and, upon searching him, recovered $226 and Sherry's cellphone. Officer Paul Sulsuk testified that as the officers approached the group, he observed Helena throw a black and yellow bag into the road. He testified that he recovered the bag, searched its contents, and found a loaded Browning Arms .22 caliber semiautomatic handgun and a twelve-inch metal pipe.

Trial Ct. Op., 9/9/20, at 2-5 (footnote and record citations omitted).

Appellant was subsequently arrested, and a criminal complaint was filed on April 4, 2016, charging him with numerous offenses including criminal conspiracy, aggravated assault, and robbery.[1] *See* Criminal Complaint, 4/4/16. On December 15, 2016, Appellant filed a motion for release on nominal bail pursuant to Pa.R.Crim.P. 600(B)(1) ("Except in cases in which the defendant is not entitled to release on bail as provided by law, no defendant shall be held in pretrial incarceration in excess of . . . 180 days from the date on which the complaint is filed[.]"). The trial court denied the motion on December 21, 2016.

On January 11, 2018, Appellant filed an omnibus pretrial motion, seeking suppression of evidence obtained as a result of an alleged illegal

---

[1] 18 Pa.C.S. §§ 903(c), 2702(a), 3701(a)(1)(ii).

seizure and arrest, and dismissal of the charges based upon a violation of Rule 600(A)(2)(a) ("Trial in a court case in which a written complaint is filed against the defendant shall commence within 365 days from the date on which the complaint is filed.").  On April 9, 2018, the trial court conducted a hearing on the Rule 600 motion.[2]  **See** N.T., 4/9/18, at 4-21.  The court denied the motion, and immediately proceeded to a non-jury trial.  The court found Appellant guilty of simple assault, criminal conspiracy, theft, and possession of an instrument of crime (PIC).[3]  The trial court found Appellant not guilty of robbery, intimidation of a witness, and three firearms offenses.[4]  Charges of aggravated assault, recklessly endangering another person, and receiving stolen property[5] were *nolle prossed* by the Commonwealth before trial.

On June 18, 2018, the trial court sentenced Appellant to two, concurrent terms of eleven and one-half to 23 months' imprisonment on the charges of criminal conspiracy and simple assault, followed by a consecutive three years' probation for his conviction of PIC.[6]  Appellant filed a timely, *pro se* notice of appeal, but mistakenly directed it to the Pennsylvania Supreme Court.  **See** Appellant's Notice of Appeal, 7/18/18.  On August 16, 2018, the Supreme

---

[2] The record does not reveal a ruling on Appellant's suppression issue.

[3] 18 Pa.C.S. §§ 2701(a), 3921(a), and 907(a), respectively.

[4] 18 Pa.C.S. §§ 4952(a)(4), 6105(a)(1), 6106(a)(1), 6108.

[5] 18 Pa.C.S. §§ 2705, 3925(a).

[6] The trial court imposed no further penalty for Appellant's theft conviction.

Court transferred the appeal to this Court. On August 20, 2018, the trial court directed Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Trial counsel, who still represented Appellant, did not respond to the order, and the trial court deemed all issues waived. **See Fontanez**, 2428 EDA 2018 (unpub. memo. at 2).

Counsel subsequently filed a motion to withdraw and an **Anders**[7] brief in this Court. Upon review, a prior panel concluded counsel's **Anders** brief was "woefully deficient," and determined, in any event, counsel had waived all issues for review by failing to comply with the trial court's Rule 1925(b) order. **See Fontanez**, 2428 EDA 2018 (unpub. memo. at 4, 6-7). Thus, the panel remanded the appeal to the trial court for the appointment of new counsel. **See id.** at 7-8. The appeal is now ready for our consideration.[8]

Appellant raises one issue on appeal:

Did the Trial Court err by denying the Rule 600 Motion and not dismissing the charges[?]

Appellant's Brief at 3.

---

[7] **See Anders v. California**, 386 U.S. 738 (1967); **Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009).

[8] Upon remand, Douglas Earl, Esquire, was appointed to represent Appellant, and complied with the trial court's order to file a Rule 1925(b) statement. However, Attorney Earl failed to file a timely brief in this Court. Thus, on November 18, 2020, we remanded the appeal to the trial court to determine if Attorney Earl had abandoned Appellant. Following a hearing, the trial court determined Attorney Earl did not abandon Appellant, and Attorney Earl subsequently filed the brief before us.

Rule 600 requires that "trial in a court case in which a written complaint is filed against the defendant shall commence within 365 days from the date on which the complaint is filed." Pa.R.Crim.P. 600(A)(2)(a). When a defendant is not brought to trial within the requisite time period, "at any time before trial, . . . the defendant . . . may file a written motion requesting that the charges be dismissed with prejudice[.]" Pa.R.Crim.P. 600(D)(1). We review the trial court's grant or denial of a defendant's Rule 600 pretrial motion to dismiss for an abuse of discretion. *Commonwealth v. Andrews*, 213 A.3d 1004, 1010 (Pa. Super. 2019) (citation omitted), *appeal denied*, 222 A.3d 376 (Pa. 2019). In doing so, our scope of review is limited to the trial court's findings and the evidence presented at the Rule 600 hearing, which we must view "in the light most favorable to the prevailing party." *Id.* (citation omitted).

When trial commences more than 365 days after the complaint is filed, a defendant is not automatically entitled to relief under Rule 600. *Commonwealth v. Moore*, 214 A.3d 244, 248 (Pa. Super. 2019). The Rule provides that "periods of delay at any stage of the proceedings caused by the Commonwealth **when the Commonwealth has failed to exercise due diligence** shall be included in the computation of the time within which trial must commence[,]" but that ["**a**]**ny other periods of delay shall be excluded from the computation**." Pa.R.Crim.P. 600(C)(1) (emphasis supplied). Thus, dismissal of the charges is the appropriate remedy only when the defendant is not brought to trial within the extended run date, which

accounts for excludable and excusable time under the Rule. **Moore**, 214 A.3d at 248.

> "Excludable time" is classified as periods of delay caused by the defendant. Pa.R.Crim.P. 600(C)(2). "Excusable delay" occurs where the delay is caused by circumstances beyond the Commonwealth's control and despite its due diligence. "Due diligence is a fact-specific concept that must be determined on a case-by-case basis. Due diligence does not require perfect vigilance and punctilious care, but rather a showing by the Commonwealth that a reasonable effort has been put forth." Due diligence includes, *inter alia*, listing a case for trial prior to the run date, preparedness for trial within the run date, and keeping adequate records to ensure compliance with Rule 600. Periods of delay caused by the Commonwealth's failure to exercise due diligence must be included in the computation of time within which trial must commence. Pa.R.Crim.P. 600(C)(1).

**Id.** at 248-49 (some citations omitted). We note "[t]he Commonwealth has the burden of demonstrating by a preponderance of the evidence that it exercised due diligence." **Commonwealth v. Plowden**, 157 A.3d 933, 941 (Pa. Super. 2017) (*en banc*).

Here, Appellant's criminal complaint was filed on April 4, 2016; thus, his mechanical run date was April 4, 2017. However, he was not brought to trial until April 9, 2018. In its opinion, the trial court provides a detailed timeline of Appellant's case, and concludes his run date was extended an additional 451 days, or until June 29, 2018. **See** Trial Ct. Op. at 7-15. Thus, because Appellant was tried before the expiration of the extended run date, it concludes no Rule 600 violation occurred. **Id.** at 15.

Appellant takes issue with two specific time periods, which he contends should run against the Commonwealth — (1) 58 days between September 27,

2016, and November 22, 2016, and (2) 57 days between April 10, 2017, and June 6, 2017. Appellant's Brief at 12. He insists that the Commonwealth did not provide discovery during the first period, occasioning a delay, and that the second delay was caused by "[t]he Commonwealth . . . trying to link up the case of Appellant with another case." *Id.*

Upon our review of the record, the parties' briefs, and the relevant statutory and case law, we conclude the trial court thoroughly addressed and properly disposed of Appellant's claim in its opinion. Thus, we rest on its well-reasoned bases.[9] *See* Trial Ct. Op. at 5-15 (detailing each trial delay and the cause thereof; explaining the delay between September 27 and October 25, 2016, was due to appointment of new defense counsel, delay between October 25 and November 22, 2016, was due to defense counsel's "technical issues . . . preventing him for accessing discovery" and not attributable to Commonwealth, and delay between April 10 and June 6, 2017, was due to court's calendar, and not "'normal progression' of a case, a lack of due diligence, or other dilatory conduct on behalf of the Commonwealth"). Accordingly, we affirm.

---

[9] We note the trial court addressed an additional challenge to the sufficiency of the evidence that Appellant included in his Rule 1925(b) statement, but did not argue in his brief. *See* Trial Ct. Op. at 19-21.

Judgment of sentence affirmed. We direct that a copy of the trial court's September 9, 2020, opinion be filed along with this memorandum and attached to any future filings in this case.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

Date: *4/30/21*

**IN THE COURT OF COMMON PLEAS**
**FIRST JUDICIAL DISTRICT OF PENNSYLVANIA**
**TRIAL DIVISION – CRIMINAL SECTION**

COMMONWEALTH OF PENNSYLVANIA    :
    :
v.    :    CP-51-CR-0005937-2016
    :    2428 EDA 2018
ERNESTO FOUNTANEZ    :

**O P I N I O N**

**LANE, J.**            **September 9, 2020**

**OVERVIEW AND PROCEDURAL HISTORY**

On April 4, 2016, Ernesto Fountanez ("Appellant") was arrested and charged with simple assault and related charges. On April 9, 2018, counsel for Appellant moved to dismiss Appellant's charges, pursuant to Pa.R.Crim.P. 600. On that same date, this court denied Appellant's motion and, following a waiver trial, found Appellant guilty of conspiracy to commit simple assault, theft by unlawful taking, possessing an instrument of a crime ("PIC"), and simple assault.[1] On June 18, 2018, this court sentenced Appellant to an aggregate term of eleven and one-half to twenty-three months in prison, followed by three years of probation.

On July 18, 2018, Appellant filed a *pro se* notice of appeal, but mistakenly filed it in the Supreme Court of Pennsylvania. The Supreme Court transferred the appeal to the Superior Court on August 16, 2018. On August 20, 2018, this court ordered Appellant to file a concise statement of errors, pursuant to Pa.R.A.P. 1925(b), and served that order on counsel of record. Counsel did not respond to the order. In its 1925(a) opinion, this court determined that any appellate issues were waived for failure to comply with the 1925(b) order.

---

[1] 18 Pa.C.S. § 903, 18 Pa.C.S.A. § 3921(a), 18 Pa.C.S.A. § 907(a), and 18 Pa.C.S.A. § 2701(a), respectively.

1

Appellate counsel sought to withdraw his representation pursuant to Anders v. California, 386 U.S. 738 (1967) and Commonwealth v. Santiago, 978 A.2d 349 (2009). After reviewing the matter, the Superior Court determined that counsel's appellate brief was "woefully deficient" and his failure to respond to this court's 1925(b) order constituted *per se* ineffective assistance of counsel. Commonwealth v. Fontanez, No. 2428 EDA 2018, 2019 WL 6899901, at *2–3 (Pa. Super. Ct. Dec. 18, 2019). Accordingly, on December 18, 2019, the Superior Court remanded the case, ordering the appointment of new counsel and the filing of a supplemental 1925(a) opinion from this court.

Douglas P. Earl, Esquire, entered his appearance on behalf of Appellant on February 19, 2020. On March 9, 2020, this court ordered counsel to file a 1925(b) statement within twenty-one days.[2] Counsel did not seek an extension of time and did not file a 1925(b) statement until 105 days later, on June 22, 2020, in which he asserted the following claims:

1. The [trial] court erred by denying [the] Rule 600 Motion of Ernesto Fountanez, particularly the time from September 27 to November 22, 2016 when discovery remained outstanding.

2. There was insufficient evidence to convict Appellant Fountanez of conspiracy—simple assault, theft by unlawful taking, [PIC], or simple assault. Ernesto Fountanez never intended to injure the complainant or conspire with another person to injure the complainant. Ernesto Fountanez never used an instrument of crime against the complainant.

(App.'s 1925(b) Statement) (unnecessary capitalization and words omitted, citations omitted).

**FACTS**

The complainant in this case is Sherry Szymanek ("Sherry"). At the time of the underlying incident, she resided in a home on East Monmouth Street in Philadelphia. (N.T. 4/9/18 at 29).

---

[2] On March 9, 2020, this court was aware and the docket reflected that new counsel had been appointed. This court's instruction to appoint new counsel (which is indicated within its 1925(b) order) was included in error.

Sherry testified that she was acquainted with Appellant through his best friend, Jennis Watson, who Sherry was dating at the time. (N.T. 4/9/18 at 33). Sherry further explained that two weeks prior to the alleged crimes, she allowed Appellant and his paramour to store their belongings on the first floor of her home, after the two had been evicted from their shared residence. (Id. at 32). Sherry provided Appellant with a copy of her house key (so he could access his belongings), but neither Appellant nor his paramour ever resided with the complainant. (Id. at 34, 49). On the day at issue, Appellant did not have permission to enter Sherry's home. (Id. at 49).

On April 3, 2016, around 3:00 p.m., Sherry returned from the supermarket and realized that her front door "was kicked in and the whole frame was messed up." (Id. at 30). Sherry immediately knocked on her neighbor's door to see if he could provide information about how the damage occurred. (Id. at 30). When she approached the neighbor's door, she observed Appellant "screaming and yelling and fighting with whoever was in the house." (Id. at 31). Sherry testified that as soon as she stepped through the neighbor's door, Appellant aggressively ran towards her, threw her against the wall, and used both of his hands to choke her. (Id. at 34, 36–37). Appellant did not stop until Helena Meeker ("Helena") pulled him away. (Id. at 37).

Sherry quickly returned to her own home, locked the door, and ran upstairs to her bedroom. (Id. at 38). A few minutes later, she looked through her bedroom window and observed Appellant and three women "screaming" outside of her residence. (Id. at 38–39). Specifically, Appellant threatened Sherry, stating that he was "going to beat [her] the 'F' up." (Id. at 38). He then unlocked her front door and the three women—Helena, Alexandra Orosco ("Alexandra"), and a third, unidentified woman—followed him to Sherry's bedroom. (Id. at 39–40).

As Appellant entered the bedroom, he pointed a firearm at Sherry and ordered her to sit on the bed. (Id. at 38, 41–42). He then told Alexandra, "Fuck her up, beat her up." (Id. at 43).

3

Alexandra immediately complied and punched Sherry "several" times over the course of ten to fifteen minutes. (N.T. 4/9/18 at 44–45). At some point, the unidentified woman grabbed a metal pipe from Appellant and attempted to strike the complainant. (Id. at 43, 45). Sherry testified that she heard Appellant cock the gun, before Helena "grabbed him" and "wrestled him to the ground." (Id. at 43). Helena eventually gained possession of the weapon and placed it in a bag. (Id. at 45). Subsequently, Appellant and the three women exited the bedroom. (Id. at 45–46). Before Appellant left, he took Sherry's cellphone and told her that "[she] was going to die." (Id. at 46). Sherry testified that her assailants also took $400 in cash from her closet, but she did not see which assailant took her money. (Id. at 51).

At some point during the altercation, Sherry's neighbor called the police. (Id. at 47–48). By the time the officers arrived, Appellant and the three women were no longer on the property. (Id. at 88). Officer Daniel Mitchell ("Officer Mitchell") testified that Sherry was "frantic" and "visibly shaken" when he arrived on the scene. (Id.). The officers put Sherry in a police vehicle and surveyed the immediate area. (Id. at 89). The officers quickly found Appellant among a group of people (which included the women who helped him attack Sherry), walking northbound on Emerald Street. (Id. at 89, 106). Sherry identified Appellant, Helena, and Alexandra as the individuals who assaulted her and took her belongings. (Id. at 48, 89, 97).

Officer Mitchell and Officer Sutton[3] stopped Alexandra and recovered $100 from her person. (Id. at 90). Officer Derrick Clark stopped Appellant and, upon searching him, recovered $226 and Sherry's cellphone. (Id. at 97). Officer Paul Sulsuk testified that as the officers approached the group, he observed Helena throw a black and yellow bag into the road. (Id. at 106).

_____

[3] Officer Sutton's full name is not contained within the notes of testimony.

4

He testified that he recovered the bag, searched its contents, and found a loaded Browning Arms .22 caliber semiautomatic handgun and a twelve-inch metal pipe. (Id. at 107).

## DISCUSSION

**I.      This court did not err or abuse its discretion in denying Appellant's Rule 600 motion.**

In his first claim, Appellant argues that this court erred in denying his Rule 600 Motion. He particularly challenges the fifty-six days between September 27, 2016 and November 22, 2016, arguing that this period should have been included in this court's calculation of non-excludable and non-excusable time. For the reasons discussed *infra*, Appellant's claim has no merit, and this court's decision should be affirmed.

The standard of review for a trial court's denial of a Rule 600 motion is well settled:

> In evaluating Rule [600] issues, our standard of review of a trial court's decision is whether the trial court abused its discretion. Judicial discretion requires action in conformity with law, upon facts and circumstances judicially before the court, after hearing and due consideration. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record, discretion is abused.

Commonwealth v. Leaner, 202 A.3d 749, 765–66 (Pa. Super. 2019) (citation omitted; brackets in original), appeal denied, 2019 WL 2754197 (Pa. 2019). An appellate court's scope of review is "limited to the evidence on the record of the Rule 600 evidentiary hearing" and the trial court's findings of fact. Commonwealth v. Watson, 140 A.3d 696, 698 (Pa. Super. 2016). Moreover, appellate courts must construe the facts in the light most favorable to the prevailing party. Id.

Pennsylvania Rule of Criminal Procedure 600 ("Rule 600") states, "[t]rial in a court case in which a written complaint is filed against the defendant shall commence within 365 days from the date on which the complaint is filed." Pa.R.Crim.P. 600(A)(2)(a). Generally, Rule 600 requires the Commonwealth to try a defendant before the expiration of the "mechanical run date," i.e.,

within 365 days of the filing of a criminal complaint. Id.; Commonwealth v. Ramos, 936 A.2d 1097, 1101 (Pa. Super. 2007). However, the rule allows certain circumstances to extend the Commonwealth's deadline. See Pa.R.Crim.P. 600(C). To determine the final date by which a defendant must be tried, Rule 600 provides that "periods of delay at any stage of the proceedings caused by the Commonwealth when the Commonwealth has failed to exercise due diligence shall be included in the computation of the time within which trial must commence. Any other periods of delay shall be excluded from the computation." Pa.R.Crim.P. 600(C)(1). The Commonwealth's failure to satisfy the prompt-trial requirements of Rule 600(C) constitutes grounds for dismissal. See Pa.R.Crim.P. 600(D)(1).

A defendant is not automatically entitled to dismissal under Rule 600 if his trial commences after the *mechanical run date*. Commonwealth v. Goldman, 70 A.3d 874, 879 (Pa. Super. 2013). Rather, dismissal is an appropriate remedy only if the defendant has not been brought to trial by the expiration of the *adjusted run date*. Id. "The adjusted run date is calculated by adding to the mechanical run date, i.e., the date 365 days from the complaint, both excludable and excusable delay." Commonwealth v. Roles, 116 A.3d 122, 125 (Pa. Super. 2015). Periods of delay are *excludable* if they are attributable to a defendant or his lawyer. Commonwealth v. Martz, --- A.3d ----, ----, 2020 WL 2029287, at *5 (Pa. Super. April 28, 2020) reargument dismissed (May 18, 2020). Conversely, periods of delay are *excusable* "where the delay is caused by circumstances beyond the Commonwealth's control and despite its due diligence." Id.

To determine whether Rule 600 requires dismissal of charges against a defendant, the following three factors must be considered:

> *First*, Rule 600(A) provides the mechanical run date. *Second*, we determine whether any excludable time exists pursuant to Rule 600(C). We add the amount of excludable time, if any, to the mechanical run date to arrive at *an adjusted run date*.

6

If the trial takes place after the adjusted run date, we apply the due diligence analysis set forth in Rule 600([D]). As we have explained, Rule 600[ ] encompasses a wide variety of circumstances under which a period of delay was outside the control of the Commonwealth and not the result of the Commonwealth's lack of diligence. Any such period of delay results in an extension of the run date. Addition of any Rule 600[ ] extensions to the adjusted run date produces the final Rule 600 run date. If the Commonwealth does not bring the defendant to trial on or before the final run date, the trial court must dismiss the charges.

Commonwealth v. Armstrong, 74 A.3d 228, 236 (Pa. Super. 2013) (citations and internal quotation marks omitted; brackets in original).

It is well settled that due diligence is a fact-specific inquiry and must be determined on a case-by-case basis. Commonwealth v. Selenski, 994 A.2d 1083, 1089 (Pa. 2010). A finding of due diligence "does not require perfect vigilance and punctilious care, but merely a showing the Commonwealth has put forth a reasonable effort." Id. In Commonwealth v. Mills, the Supreme Court of Pennsylvania held that "time attributable to the normal progression of a case simply is not [excludable] 'delay' for purposes of Rule 600." 162 A.3d 323, 325 (Pa. 2017). Thus, trial courts are required to distinguish the "time necessary to ordinary trial preparation [from] judicial delay arising out of the court's own scheduling concerns." Id. Delay caused by the "normal progression of a case" must be included in the Rule 600 computation unless the Commonwealth can show it exercised due diligence during the period or the record establishes that the judiciary or the defense was responsible for the delay. Id.; Pa.R.Crim.P. 600(C).

In the case at bar, Appellant was arrested and the criminal complaint was filed on April 4, 2016. Accordingly, the mechanical run date was April 4, 2017. See Pa.R.Crim.P. 600(A)(2)(a). Appellant's trial did not commence until April 9, 2018—735 days after the filing of his criminal complaint. However, there were significant periods of excusable and excludable time that sanction this delay. This court calculated the time as follows:[4]

---

[4] The shaded regions indicate periods of excludable or excusable delay.

| DATE | EVENT | REASON FOR DELAY | NUMBER OF DAYS BETWEEN DATES | TRIAL COURT'S DETERMINATION |
|---|---|---|---|---|
| April 4, 2016 | Appellant's arrest; **criminal complaint filed** | Scheduled for preliminary hearing | 15 | Attributable to Commonwealth |
| April 19, 2016 | Case listed for preliminary hearing | Commonwealth request to continue preliminary hearing | 57 | Attributable to Commonwealth |
| June 15, 2016 | Preliminary Hearing | Court continuance—preliminary hearing held under advisement | 2 | Attributable to MC court |
| June 17, 2016 | Case held for court by the Hon. Francis T. Shields | Formal arraignment scheduled for 7/8/11 | 21 | Attributable to Commonwealth |
| July 8, 2016 | Formal arraignment | Scheduled for pre-trial conference | 81 | Attributable to Commonwealth |
| September 27, 2016 | Pre-trial bring back | Defense continuance request | 28 | Attributable to Defense |
| October 25, 2016 | Pre-trial bring back | Defense request to convey Commonwealth offer | 28 | Attributable to Defense |
| November 22, 2016 | Pre-trial bring back | Defense request to convey Commonwealth offer | 29 | Attributable to Defense |
| December 21, 2016 | Pre-trial bring back | Defendant rejected offer; Commonwealth requested trial date | 14 | Attributable to Commonwealth |
| January 4, 2017 | Scheduling conference | Commonwealth continuance request, for the purpose of "linking up" codefendant trials | 96 | Attributable to Commonwealth |
| April 10, 2017 | Motions hearing and scheduling conference | Trial listed for earliest possible date | 57 | Attributable to this court's calendar |
| June 6, 2017 | Listed for trial | Defense continuance request | 224 | Attributable to Defense |
| January 16, 2018 | Listed for trial | Joint continuance request | 17 | Attributable to Defense |
| February 2, 2018 | Listed for trial | Commonwealth continuance request—key witness family emergency | 59 | Attributable to Commonwealth but excusable |
| April 2, 2018 | Listed for trial | Commonwealth continuance request—witness contracted influenza | 7 | Attributable to Commonwealth but excusable |
| April 9, 2018 | Waiver trial | N/A | N/A | |

### a. April 4, 2016 to September 27, 2016—174 days attributable to the Commonwealth.

Between April 4, 2016 and September 27, 2016, Appellant's case was listed for his preliminary arraignment; two preliminary hearings—due to the Commonwealth's request to continue the initial preliminary hearing (MC Docket at 7);[5] formal arraignment; and a pre-trial bring back. (Id. at 2). The Commonwealth did not argue that it was prepared to proceed to trial at any point during this period. See (N.T. 4/9/18 at 11–16, 19–20). Thus, this court determined that 174 days of this 176-day period was simply due to the case's "normal progression" and, therefore, attributable to the Commonwealth for the purposes of Rule 600. See Mills, 162 A.3d at 324–25 (holding that the 174 days between the filing of the criminal complaint and a status conference was not excludable "delay" for Rule 600 purposes, as the Commonwealth was not ready to proceed to trial during that time). This court excluded from its calculation the two-day period between June 15, 2016 and June 17, 2016, during which the Honorable Francis T. Shields held Appellant's preliminary hearing under advisement. See (MC Docket at 8).

### b. September 27, 2016 to October 25, 2016—twenty-eight excludable days attributable to the defense.

On September 14, 2016, Appellant's original trial counsel was suspended from the Bar of this Commonwealth.[6] On September 23, 2016, Kevin Thomas Birley, Esq. ("trial counsel") was appointed to represent Appellant. (N.T. 4/9/18 at 6). Four days later, on September 27, 2016, Appellant's case was listed for a pre-trial bring back. On that date, trial counsel requested a continuance, and the case was scheduled to return on October 25, 2016. (Id. at 12).

The Superior Court has held that, for the purpose of Rule 600 calculations, the Commonwealth is not accountable for delays caused by the defense's request for a continuance.

---

[5] Appellant's Originating Docket Number is MC-51-CR-0009601-2016.
[6] See Order, Office of Disciplinary Counsel v. Stosic, No. 2280 DD No. 3, No. 65 DB 2015 (Pa. September 14, 2016).

See Martz, 2020 WL 2029287 at *5 (noting that periods of delay are excludable if they are attributable to the defense); Watson, 140 A.3d at 699 (noting that Pennsylvania case law suggests that the Commonwealth may not be held accountable for delay caused by defense continuances); Commonwealth v. Hunt, 858 A.2d 1234, 1244 (Pa. Super. 2004) (holding dismissal under Rule 600 unwarranted where most of the factors resulting in postponement—primarily defense continuances—were beyond control of Commonwealth).

Here, trial counsel argued that the twenty-eight days between September 27, 2016 and October 25, 2016 should have been attributed to the Commonwealth. (N.T. 4/9/18 at 7, 16–17). The Commonwealth disagreed, noting that on September 27, 2016, trial counsel requested a continuance, as he had only been appointed to the case four days prior. (Id. at 12). Trial counsel did not deny seeking a continuance. Rather, he argued that this time should have counted against the Commonwealth because, as of September 27, the Commonwealth had not yet provided discovery. (Id. at 7, 16–17). This court disagreed.

Specifically, this court determined that trial counsel sought and a continuance was granted for the purpose of enabling him, as newly-appointed counsel, to become familiar with the case. Original counsel's professional suspension and the necessary appointment of new counsel was neither caused by the Commonwealth nor within its control. Thus, for the purposes of Rule 600, the twenty-eight-day period between September 27, 2016 and October 25, 2016 is attributable to the defense and, therefore, *excludable*.

### c. October 25, 2016 and November 22, 2016—twenty-eight excludable days attributable to the defense.

On October 25, 2016, Appellant's case was listed for a pre-trial bring back. The case was scheduled to return on November 22, 2016. During the hearing on Appellant's Rule 600 motion, the Commonwealth argued that the twenty-eight days between October 25, 2016 and November

10

22, 2016 were excludable. (N.T. 4/9/18 at 13).The Commonwealth explained that on October 25, 2016, it conveyed an offer to Appellant, and "there was a defense [continuance] request to consider the offer." (Id.). Conversely, trial counsel argued that the time should have been attributed to the Commonwealth, as he did not receive discovery until November 22, 2016:

> [Mr. Birley]: October 25, 2016, the Commonwealth reported that [discovery] was uploaded on the system[,] but I did not have it available to me. I'm obviously capable of downloading the discovery. I have on every other case that I've got. This one I couldn't get discover[y] on the case.

(Id. at 7). The Commonwealth countered that discovery was, in fact, available on that date, explaining that it was "released and marked as released on October 25 into the E-discovery system[.]" (Id. at 19). This court agreed.

First, this court determined that the circumstance occasioning postponement was the defense's request for a continuance. Accordingly, the time was excludable. See Leaner, 202 A.3d at 767 ("[T]o the extent [the] [a]ppellant suggests the Commonwealth may be held accountable for delay caused by the defense's requests for continuance, our jurisprudence has held the opposite."). This court further determined that trial counsel's technical issues (which allegedly prevented him from accessing discovery) could not be reasonably attributed to the Commonwealth.

Moreover, counsel's claim—that he "kept making an issue of [not receiving discovery] at court"—is not persuasive. (N.T. 4/9/18 at 16). Discovery was not available until October 25, 2016. (Id. at 19). Notably, the case was not listed again until November 22, 2016, and, on that date, the Commonwealth also provided counsel with a paper copy of discovery. (Id. at 17). The October 25 hearing is the only court-date on which (1) discovery was available and (2) counsel could have claimed that he did not have it. Thus, his argument that he continuously had to "jump up and down in court[, asking for discovery]" is somewhat misleading and does not support a finding of lack of due diligence on behalf of the Commonwealth. (Id.).

11

### d. November 22, 2016 to December 21, 2016—twenty-nine excludable days attributable to Appellant.

Appellant's case was listed for pre-trial bring back on November 22, 2016. The case was scheduled to return twenty-nine days later (December 21, 2016). Appellant conceded that this time was attributable to the defense, explaining, "[O]n November 22nd, I took a date to pass discovery and an offer which was rejected at the next court date, so I concede that the 11/22 to 12/21 *should be excludable.*" (N.T. 4/9/18 at 8) (emphasis added). This court agreed.

### e. December 21, 2016 to April 10, 2017—110 days attributable to the Commonwealth.

On December 21, 2016, Appellant rejected the Commonwealth's offer. (N.T. 4/9/18 at 8). The Commonwealth requested a trial date, and the case was scheduled to return for a scheduling conference fourteen days later on January 4, 2017. (Id.). This court attributed this fourteen-day delay to the Commonwealth, as the Commonwealth did not argue that it was ready to proceed to trial on December 21, 2016.

At the subsequent listing on January 4, 2017, the Commonwealth was not prepared to try Appellant. (Id. at 13–14). Accordingly, Appellant's case was scheduled to return ninety-six days later, on April 10, 2017. (Id. at 8, 14). The Commonwealth conceded that it was responsible for this period of delay, explaining that "this was a three-codefendant case" and "we were trying to link those up for trial." (Id. at 20, 14). This court agreed and included this time in its *non-excludable* Rule 600 calculation.

### f. April 10, 2017 to June 6, 2017—fifty-seven excludable days attributable to this court's calendar.

On April 10, 2017, Appellant's case was listed for a motions hearing and scheduling conference. On that date, the Commonwealth indicated that it was prepared to proceed to trial, and

the case was scheduled for trial on June 6, 2017, the earliest feasible date permitted by this court's calendar. As the Commonwealth correctly noted:

> There were efforts made in order to bring [the three co-defendants] back together . . . not only from the Commonwealth perspective but also [in the interest of] judicial efficiency as well and again[,] that . . . [delay] was based [on] the earliest date that we could have gotten, I assume[,] *based on the Court calendar* in order to link all the defendants up in that case.

(N.T. 4/9/18 at 20) (emphasis added).

Thus, the Commonwealth is not accountable for this period of delay, as the postponement was not caused the "normal progression" of a case, a lack of due diligence, or other dilatory conduct of behalf of the Commonwealth. Where, as here, "a trial-ready prosecutor must wait several months due to a court calendar, the time should be treated as 'delay' for which the Commonwealth is not accountable." Mills, 162 A.3d at 325. See also, Leaner, 202 A.3d at 767 (citation and quotation marks omitted) ("[I]t is well-settled that judicial delay can support the grant of an extension of the Rule 600 run date. This is particularly true where, as here, there is no indication the trial court did not schedule the criminal proceedings at the earliest possible date consistent with the court's business."). Accordingly, this court determined that the fifty-seven days between April 10, 2017 and June 6, 2017 were *excludable*.

### g. June 6, 2017 to January 16, 2018—224 excludable days attributable to the defense.

On June 6, 2017, Appellant's case was scheduled for trial. However, trial counsel requested a continuance, as he was on trial in an unrelated matter. (N.T. 4/9/18 at 9). Appellant's case was rescheduled to proceed on January 16, 2018. This court determined—and Appellant conceded—that the 224 days between June 6, 2017 and January 16, 2018 constituted *excludable* time. (Id. at 9).

13

### h. January 16, 2018 to February 2, 2018—seventeen excludable days attributable to a joint-continuance request.

On January 16, 2018, Appellant elected to proceed with a waiver trial, and the parties requested a joint continuance. (N.T. 4/9/18 at 9). Appellant's case was scheduled for a waiver trial on February 2, 2018. (Id.). The seventeen days between these dates are *excludable*. See Commonwealth v. Peterson, 19 A.3d 1131, 1137 (Pa. Super. 2011) (citation omitted) ("[A] joint continuance is excludable delay.").

### i. February 2, 2018 to April 2, 2018—fifty-nine excusable days attributable to circumstances beyond the Commonwealth's control, despite its due diligence.

On February 2, 2018, the Commonwealth requested a continuance after a witness unexpectedly and abruptly left court due to a family emergency. (N.T. 4/9/18 at 15). The Commonwealth was otherwise ready to proceed to trial and would have proceeded on that date, but for the witness's sudden unavailability. Obviously, no amount of due diligence on behalf of the Commonwealth can control or predict emergencies in a witness's personal life. Thus, although the fifty-nine days between February 2, 2018 and April 2, 2018 are attributable to the Commonwealth, *this period of delay is excusable.* See Peterson, 19 A.3d at 1138 ("[T]he prosecution in the case *sub judice* had no control over the officer's inability to appear[,] and the sixteen-day time frame from January 16, 2007 until February 1, 2007 is excusable."); Commonwealth v. Staten, 950 A.2d 1006, 1010 (Pa. Super. 2008) (The court found due diligence on behalf of the Commonwealth, as it "stood ready but for the unavailability of a necessary witness, an arresting police officer who, beyond the control of the Commonwealth, had been assigned to serve warrants that day.").

**j. April 2, 2018 to April 9, 2018—seven excusable days attributable to circumstances beyond the Commonwealth's control, despite its due diligence.**

On April 2, 2018, the case was again listed for trial. The Commonwealth requested a continuance on that date, as the complaining witness was infected with the flu. (N.T. 4/9/18 at 15). The Commonwealth was otherwise prepared to proceed to trial. Thus, this court determined that the seven days between April 2, 2018 and Appellant's trial on April 9, 2018 constituted *excusable delay.*

In sum, this court found 451 days of excludable or excusable delay. The mechanical run date was April 4, 2017, i.e., 365 days after the criminal complaint was filed against Appellant. Accordingly, Appellant's adjusted run date—the final date by which the Commonwealth was required to try Appellant—was June 29, 2018. See Roles, 116 A.3d at 125 ("The adjusted run date is calculated by adding to the mechanical run date, i.e., the date 365 days from the complaint, both excludable and excusable delay."). This court denied Appellant's Rule 600 motion on this basis, and its decision should be affirmed.

**II.     The evidence is sufficient to sustain Appellant's convictions of conspiracy to commit simple assault, theft by unlawful taking, PIC, and simple assault.**

In his second allegation of error, Appellant claims that the evidence presented at trial is insufficient to sustain his convictions for conspiracy, theft, PIC, and simple assault. Each claim is without merit.

A challenge to the sufficiency of the evidence is a question of law requiring a plenary scope of review. Commonwealth v. Jacoby, 170 A.3d 1065, 1076 (Pa. 2017). In reviewing sufficiency of evidence claims, a reviewing court must determine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, when viewed in the light most favorable to the verdict winner, are sufficient to support all the elements of the offense beyond a reasonable doubt.

Commonwealth v. Eckrote, 12 A.3d 383, 385 (Pa. Super. 2010). The Commonwealth may satisfy its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Commonwealth v. Valentine, 101 A.3d 801, 805 (Pa. Super. 2014). In applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Commonwealth v. Passmore, 857 A.2d 697, 706 (Pa. Super. 2004). Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence. Id.

### a. The evidence presented at trial is sufficient to sustain Appellant's conviction for conspiracy.

Appellant argues that the evidence presented at trial is insufficient to sustain his conviction for conspiracy. This claim is baseless, and Appellant's conviction should be affirmed.

Section 903 of the Pennsylvania Crimes Code defines "conspiracy" as follows:

**(a) Definition of conspiracy.**--A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:

> (1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or

> (2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

18 Pa.C.S.A. § 903.

To sustain a conviction for conspiracy, the Commonwealth must establish that: (1) the defendant intended to commit or aid in the commission of the criminal act; (2) the defendant entered into an agreement with another to engage in the crime; and (3) the defendant or one or more of the other co-conspirators committed an overt act in furtherance of the agreed upon crime. Commonwealth v. Johnson, 985 A.2d 915, 920 (Pa. 2009). Most cases involving conspiracy do

16

not involve an explicit or formal agreement. Id. Nonetheless, "[t]he essence of a criminal conspiracy is a common understanding, no matter how it came into being, that a particular criminal objective be accomplished." Commonwealth v. Melvin, 103 A.3d 1, 42 (Pa. Super. 2014). Accordingly, an agreement between coconspirators is generally established through circumstantial evidence, including "the relations, conduct, or circumstances of the parties or overt acts on the part of co-conspirators." Johnson, 985 A.2d at 920.

In the case at bar, the evidence clearly supports Appellant's conviction for conspiracy to commit simple assault. Appellant claims that he "never intended to . . . conspire with another person to injure the [c]omplainant." However, the record is patently at odds with this claim. Appellant's explicit threat "to beat [her] the 'F' up" and his express order to "[f]uck her up, beat her up," coupled with his act of holding the victim at gunpoint, demonstrate that he positively intended to assault Sherry. (Id. at 38, 43–45). Logic does not permit any other interpretation. Moreover, Appellant's hostile cohort followed him into the victim's house, and, on Appellant's command, violently attacked the victim. (Id. at 43–45). Although there is no evidence of an explicit agreement to conspire, Appellant and his codefendants were clearly acting in concert to facilitate and achieve the same criminal objective—to assault and injure Sherry. This is unequivocally sufficient to prove conspiracy. Thus, Appellant's conviction should be affirmed.

### b. The evidence is sufficient to sustain Appellant's conviction for theft by unlawful taking.

Appellant next claims that the evidence presented at trial is insufficient to sustain his conviction for theft. This claim is waived due to lack of specificity.

If an appellant seeks to challenge his convictions on the basis that the evidence presented at trial was insufficient to sustain those convictions, his 1925(b) statement must specify which element or elements upon which the evidence was insufficient. Commonwealth v. Williams, 959

17

A.2d 1252, 1257–58 (Pa. Super. 2008). Failure to specifically identify which elements are unsupported by the evidence results in waiver of the issue:

> If [a]ppellant wants to preserve a claim that the evidence was insufficient, then the 1925(b) statement needs to specify the element or elements upon which the evidence was insufficient. This Court can then analyze the element or elements on appeal. The instant 1925(b) statement simply does not specify the allegedly unproven elements. Therefore, the sufficiency issue is waived.

Id.

Here, Appellant simply argues that "[t]here was insufficient evidence to convict [him] of . . . theft by unlawful taking[.]" Appellant does not identify any particular element that was allegedly unsupported by the evidence. Thus, the issue is waived.

Moreover, even if the issue were not waived, the evidence presented at trial clearly supports Appellant's conviction for theft. A person is guilty of theft by unlawful taking if he "unlawfully takes, or exercises unlawful control over, movable property of another with intent to deprive him thereof." 18 Pa.C.S.A. § 3921(a). Here, Sherry testified as follows:

Q: You mentioned that your cell phone was taken.

A: Yes.

Q: Did you see who took your cell phone?

A: [Appellant].

Q: And how did he take that?

A: In the struggle everyone lost their phone so he picked up my phone off the floor and took my phone, so there was no way for me to call the police or anything.

Q: Did you see him actually pick it up?

A: Yes.

Q: Did you see where he put it?

A: Yes, in his pocket.

(N.T. 4/9/19 at 46).

18

Sherry directly observed Appellant take her phone, and there is absolutely no evidence indicating that he had permission to do so or that he took the phone by mistake. Moreover, Sherry's allegation is corroborated by the testimony of Officer Clark, who stated that he recovered the complainant's cellphone from Appellant. (Id. at 97). Thus, the evidence is clearly sufficient to sustain Appellant's conviction for theft.

### c. The evidence presented at trial is sufficient to sustain Appellant's conviction for PIC and simple assault.

Finally, Appellant claims that there was insufficient to convict him of PIC and simple assault, as he "never intended to injure the complainant . . . [and] never used an instrument of crime against the complainant." Appellant is not entitled to relief on either of these remarkably frivolous claims.

Section 2701 of the Crimes Code provides that a person is guilty of simple assault if he:

(1) attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another;

(2) negligently causes bodily injury to another with a deadly weapon;

(3) attempts by physical menace to put another in fear of imminent serious bodily injury; or

(4) conceals or attempts to conceal a hypodermic needle on his person and intentionally or knowingly penetrates a law enforcement officer or an officer or an employee of a correctional institution, county jail or prison, detention facility or mental hospital during the course of an arrest or any search of the person.

18 Pa.C.S.A. § 2701(a).

Section 2301 defines "bodily injury" as "[i]mpairment of physical condition or substantial pain." 18 Pa.C.S.A. § 2301. A fact-finder may infer that a defendant's actions actually caused bodily injury (i.e., "impairment of physical condition or substantial pain") and enter a conviction of simple assault, even if the victim does not explicitly testify to pain. Commonwealth v.

19

Jorgenson, 492 A.2d 2, 6 (Pa. Super. 1985), rev'd on other grounds, 517 A.2d 1287 (Pa. 1986) (upholding a conviction of simple assault and finding bodily injury, despite "a lack of testimony on pain," where the defendant struck the victim twice across the face after she refused his advances).

Here, the Commonwealth presented substantial evidence which proved Appellant guilty of simple assault. Sherry testified that Appellant slammed her against the wall before using both of his hands to strangle her. (N.T. 4/9/18 at 36–37). Appellant choked her with such force that she began to lose consciousness and sustained bruises on her neck "for quite some time." (Id. at 37). This, alone, is sufficient to prove simple assault. See Commonwealth v. Emler, 903 A.2d 1273, 1278 (Pa. Super. 2006) (finding sufficient evidence of simple assault where the defendant "vigorously and forcefully" the victim, causing the victim to feel pain for several weeks).

Sherry also testified that Appellant explicitly threatened to harm her before holding her at gunpoint for several minutes. (N.T. 4/9/18 at 38, 45). This—independently of any other act—is sufficient to sustain Appellant's simple assault conviction. See Commonwealth v. Alford, 880 A.2d 666, 672 (Pa. Super. 2005) (noting that pounding on the victim's front door and pointing a gun at her was "certainly . . . sufficient to prove simple assault," i.e., an attempt by physical menace to put her in fear of imminent serious bodily injury).

Moreover, the acts of Appellant's coconspirators support his conviction for simple assault. It is well settled that "[C]onspirators are liable for acts of co-conspirators committed in furtherance of the conspiracy. Even if the conspirator did not act as a principal in committing the underlying crime, he is still criminally liable for the actions of his co-conspirators taken in furtherance of the conspiracy." Commonwealth v. Lambert, 795 A.2d 1010, 1016 (Pa. Super. 2002). As discussed supra, Appellant and his codefendants conspired to assault Sherry. Appellant directed his

20

coconspirators to "[f]uck her up." (N.T. 4/9/18 at 43). Alexandra repeatedly punched Sherry, which caused the victim to sustain several injuries, including swollen eyes, the loss of a tooth, the formation of a blood clot behind her eye, and the formation of a seemingly permanent lump on her jaw. (Id. at 44, 64). These injuries are easily sufficient to prove simple assault.

Finally, Appellant's use of a firearm, under the particular circumstances of this case, is sufficient to sustain his conviction for PIC. A person is guilty of PIC if he "possesses any instrument of crime with intent to employ it criminally." 18 Pa.C.S.A. § 907. Section 907(d) defines an instrument of crime as "(1) [a]nything specially made or specially adapted for criminal use[, or] (2) [a]nything used for criminal purposes and possessed by the actor under circumstances not manifestly appropriate for lawful uses it may have." Here, Appellant possessed and used a loaded firearm for the purpose of assaulting Sherry—an undeniably unlawful use of a firearm. Thus, Appellant's PIC conviction should be affirmed.

## CONCLUSION

This court has undertaken careful review of the record and finds no harmful, prejudicial, or reversible errors, and its decision should be affirmed.

BY THE COURT:

_____ J.

## IN THE COURT OF COMMON PLEAS
### FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
### TRIAL DIVISION – CRIMINAL SECTION

COMMONWEALTH OF PENNSYLVANIA  :
               :
      v.        :   **CP-51-CR-0005937-2016**
               :   **2428 EDA 2018**
   ERNESTO FOUNTANEZ   :

### PROOF OF SERVICE

I hereby certify that I am this day serving the foregoing Court Opinion upon the person(s), and in the manner indicated below, which service satisfies the requirements of Pa. R. Crim. P. 114:

Defense Counsel:  Douglas P. Earl, Esq.
         1015 Chestnut St., Suite 902
         Philadelphia, PA 19107

Type of Service:  (✓) First Class Mail ( ) Certified ( ) Personal Service

District Attorney:  Paul George, Esq.
         Supervisor, Appeals Unit
         Philadelphia District Attorney's Office
         Three South Penn Square
         Philadelphia, PA 19107-3499

Type of Service:  (✓) First Class Mail ( ) Certified ( ) Personal Service

Date: September 9, 2020

Jessica Stachelrodt, Esq.
Law Clerk to the Honorable Timika Lane